IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| RONALD MEEKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action File No: 3:25-cv-204 |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| SCHENKER INC., ) | |
| d/b/a DB SCHENKER USA, ) | |
| ) | |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Ronald Meeks ("Meeks" or "Plaintiff"), by and through undersigned counsel, brings this Complaint against Schenker Inc., dba Schenker USA ("Schenker" or "Defendant") and hereby states and alleges as follows:

## PRELIMINARY STATEMENT

1. This case arises from Schenker's unlawful wage and hour practices and illegal discrimination and retaliation against Meeks during his employment with and unlawful termination from Schenker. Specifically, Meeks asserts claims arising under the following laws: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §12101 *et seq.*; the Age Discrimination Act of 1967, ("ADEA") 29 U.S.C. § 623; the Family Medical

1

Leave Act of 1993, ("FMLA") 29 U.S.C. § 2614(a); and wrongful discharge in violation of the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C.G.S. § 143-422.2 (1977), et seq.

## THE PARTIES

2. Meeks is, and at all relevant times, has been an adult resident of North Carolina.

3. Schenker is a German corporation incorporated in the state of New York, doing business in the State of North Carolina, subject to suit under the relevant federal statutes, and under legal precedent, is the proper entity to be sued in this cause of action.

4. The unlawful practices alleged herein were committed by Schenker within the Western District of North Carolina, specifically at Schenker's Charlotte, North Carolina facility, located at 3801 Beam Rd f1, Charlotte, NC 28217.

5. Schenker was Meeks' employer during the relevant time period alleged herein.

6. Schenker is an employer within the meaning of the FLSA, ADA, ADEA, FMLA, and NCEEPA, in that it has engaged in an industry that affects commerce and employs more than fifty (50) employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

7. At all times relevant to this action, Schenker has had gross operating revenue in excess of $500,000 (Five Hundred Thousand Dollars).

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims rising under federal law, including the FLSA, ADA, ADEA, and FMLA.

9. This Court has supplemental subject matter jurisdiction over the state and common law claims as set forth below under 28 U.S.C. § 1367, because the claims arising under state law are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

10. This Court has personal jurisdiction over Schenker, as it is registered to do business withing the State of North Carolina and, at all times relevant to this action, has and continues to operate and employee individuals within the State of North Carolina Schenker can be served through its registered agent, CT Corporation System, located at 160 Mine Lake Court, Suite 200, Charlotte, North Carolina 27685.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because acts giving rise to the claims occurred within the Western District of North Carolina.

## THE PARTIES

12. Meeks is, and at all relevant times, has been, a resident of the state of North Carolina. Meeks was employed by Defendant Schenker in Charlotte, North Carolina during the events alleged herein at the Schenker facility in Charlotte, North Carolina, located at 3801 Beam Rd, Charlotte, NC 28217.

13. Schenker is a German corporation incorporated in the state of New York, doing business in the State of North Carolina, subject to suit under the relevant federal statutes, which employed and terminated Meeks as alleged below and, under legal precedent, is the proper entity to be sued in this cause of action.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. Meeks has exhausted his administrative remedies by timely filing a Charge with the United States Equal Employment Opportunity Commission ("EEOC"), on February 17, 2025.

15. Meeks received a Dismissal and Notice of Rights from the EEOC on March 3, 2025. A copy of the former is attached as Exhibit 1 and incorporated herein.

## FACTUAL BACKGROUND

**A. Relevant Background Regarding Meeks' Employment with Schenker**

16. Meeks is a 76-year-old Vietnam War veteran who was honorably discharged from the US Air Force in 1972.

17. For 46 years, beginning in 1978, Meeks worked for Schenker, which specializes in global logistics, particularly transporting large cargo oversees.

18. In over four decades of employment with Schenker, Meeks never received a single disciplinary action or negative performance review. He was well liked and regarded as a reliable, diligent, and very hardworking employee.

19. In 2017, Schenker assigned a manager to oversee the office where Meeks worked, in Charlotte North Carolina. The new manager, David Chicano ("Chicano"), had been promoted from the sales department into management.

20. Chicano seemed to prefer working with younger employees than employees over the age of 40 years old. For example, one of the first actions that Chicano took after assuming his new management position was to terminate several employees, all of whom were over the age of 40. Upon information and belief, Chicano also awarded raises more often and more readily to employees under the age of 40 than he did for older employees.

21. In 2019, Schenker assigned another manager to the Charlotte office, Ryan Blizzard ("Blizzard").

22. Before Schenker assigned Chicano and Blizzard as managers of the Charlotte office, Meeks had performed some managerial and supervisory tasks, such as approving overtiming and scheduling.

23. Chicano assumed or reassigned to Blizzard all the supervisory and managerial duties that Meeks had previously performed, including approving overtime pay, scheduling, and providing training for employees at the Charlotte office.

24. After Chicano had stripped him of his supervisory/managerial duties, Meeks' duties and responsibilities were relegated to data entry, reviewing and responding to customer emails, and tracking shipments on a computer.

25. In 2020, Chicano assigned Meeks additional non-management, non-supervisory duties that had to be performed in an Schenker warehouse, adjacent to the Charlotte office. These duties included physically labeling shipment orders, pulling

5

documents, and truck manifests. These were in addition to Meeks' data entry and customer service duties which he performed in the office.

26. The warehouse where Meeks was required to work was not air-conditioned, and in the hot Charlotte summers, the temperature exceeded 100 degrees in the warehouse.

**B. Schenker Misclassified Meeks as Exempt from Overtime.**

27. Meeks' job title was "Senior Export Manager," but this title was a misnomer.

28. Meeks was not responsible for, nor was he authorized to, issue warnings, discipline, or performance reviews of anyone.

29. Meeks did not have the authority to hire or fire employees and was never asked for input regarding personnel matters.

30. In reality, Meeks was performing the very same duties and responsibilities of Schenker's "Air Export Coordinators." For example, Air Export Coordinators performed data entry, reviewed and responded to customer emails, and tracked shipment on computers.

31. Upon information and belief, Erica Williams ("Williams"), Kim Jones ("Jones"), Mike Harding ("Harding") and Monk Peth ("Peth") were or are employees of Schenker with the job title "air export coordinator."

32. The only distinction between Meeks' job duties and those of Williams, Jones, Harding, and Peth was that Chicano assigned Meeks the additional warehouse duties, which included labelling shipments, pulling documents and manifests, and physically move items in the warehouse.

33. Meeks and the Air Export Coordinators often worked in excess of 40 hours in a workweek.

34. Upon information and belief, Schenker classified Air Export Coordinators as exempt from overtime and paid them 1.5 times their regular rate of pay for the hours they worked in excess of 40 in a workweek.

35. Schenker misclassified Meeks as non-exempt from overtime, and did not pay him 1.5 times his regular rate of pay for any of the hours he worked in excess of 40 in a workweek.

36. During the relevant timeframe, Meeks worked far more than 40 hours per workweek dating back to 2020. The fact that he worked long hours was well known by management.

37. Meeks worked between 12-14 hours of unpaid overtime Mondays through Fridays. Specifically, Meeks' shift typically started at 9 a.m. Meeks worked in the Charlotte office performing his data entry and customer services duties for eight hours, then transitioned to performing his warehouse duties for four or more hours per workday.

38. Meeks also routinely worked weekends. He worked four or more hours on Saturdays and would occasionally work on Sundays as well.

39. Upon information and belief, Schenker did not keep records of the hours worked by Meeks.

40. Schenker paid Meeks a yearly salary, irrespective of hours worked. In March 2024, his salary was $63,504.75.

41. Upon information and belief, export coordinators were paid far more than Meeks because they were paid overtime for performing the same duties as Meeks.

C. **Meeks Takes FMLA and Requests Reasonable Accommodations.**

42. In or around June 2024, Meeks communicated with his P&O manager about seeking a reasonable accommodation for his disabilities.

43. On June 21, 2024, Meeks received paperwork from Schenker to be completed and submitted by his provider regarding his accommodation needs.

44. On July 5, 2024, Meeks submitted a written leave request, filled out by his healthcare provider, requesting continuous leave from July 22, 2024, to August 12, 2024. The request was based on permanent and chronic health conditions.

45. Meeks' July 5, 2024, submission also requested intermittent leave, specifically noting, "dates are not confirmed at this time, but [Meeks] needs ongoing medical care for multiple conditions for which I might refer him from time to time likely up to 3-4 times per year between his endocrine and rheumatological conditions."

46. Meeks took approved medical leave from July 22, 2024, and returned on July 29, 2024.

47. While he was on this approved medical leave, between July 22, 2024, and July 29, 2024, Schenker transitioned to a new computer system.

48. When Meeks returned to work on July 29, 2024, he requested training in the new computer system, but Schenker and Chicano refused to schedule training by a third party or train Meeks in-house on the entirely new system, even after Meeks' repeated requests in August of 2024.

8

49. Schenker's refusal to provide him training caused Meeks' significant stress, anxiety, and fear as he struggled to perform his duties on the new computer system which he had no experience whatsoever.

50. In August of 2024, Meeks submitted the paperwork that Schenker had provided him in June to move forward with his request for reasonable accommodations.

51. Meeks provider noted that Meeks suffered from certain acute and chronic autoimmune conditions, post-traumatic stress disorder, and anxiety. The provider noted that these disabilities substantially limited Meeks from certain activities, including bending and lifting, and impacted his musculoskeletal system, respiratory system, and cognitive thinking.

52. Meeks' provider noted restrictions for Meeks, including no pushing, pulling, or lifting heavy objects; reduced exposure to high-stress situations; limited work hours to eight hours per day; and that Schenker provide him training on the new computer system.

53. Schenker, however, did not approve reasonable accommodations for Meeks, and he was still required to work long hours, perform warehouse duties, and was not provided training on the computer system.

54. On August 25, 2024, Meeks sent an email to Wade Hampton, Head of Operations, US East, announcing that he felt compelled to retire. Meeks reported unlawful discrimination and retaliation as the reason for his resignation.

## COUNT 1
### Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

1. Plaintiff realleges the allegations as set forth above.

2. At all times relevant to this action, Schenker has been subject to the requirements of the FLSA.

3. At all times relevant to this action, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

4. The FLSA regulates, among other things, the payment of overtime by employers whose employees are engaged in interstate commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

5. The FLSA requires employers such as Schenker to pay all non-exempt employees overtime compensation at a rate of one-and-one-half times the regular rate of pay for all hours worked in excess of 40 hours in a workweek.

6. Schenker is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

7. At all times relevant to this action, Schenker has been and continues to be an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

8. At all times relevant to this action, Schenker has employed and/or continues to employ "employee[s]," including Plaintiff.

9. At all times relevant to this action, Schenker has had gross operating revenue in excess of five-hundred thousand dollars ($500,000).

10. Schenker violated the FLSA when it misclassified Plaintiff as exempt from overtime and failed to pay him overtime for all hours worked in excess of 40 hours in a workweek.

11. Schenker violated the FLSA when it failed to maintain employee records as required by the FLSA.

12. Schenker's violations were willful, because it knew or showed reckless disregard as to whether its actions violated the FLSA. U.S.C. § 255(a). Among other things, this is evident from the fact that Chicano knew that Plaintiff was performing the same duties as "export coordinators," which was non-exempt from overtime, and that Plaintiff was not performing any supervisory duties.

13. As a result of Schenker's violation of the FLSA, Plaintiff suffered damages by failing to receive all wages earned and owing to him, at the appropriate rate of pay, for all hours worked, in an amount to be determined at trial, and is entitled to recover such amounts, liquidated damages, pre-and post-judgment interest, his reasonable attorneys' fees, costs, and other such compensation and legal remedies as allowed by law, including declaratory and injunctive or other equitable relief. *See* 29 U.S.C. § 216(b).

## COUNT 2
### Disability Discrimination and Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A).

14. Plaintiff realleges the allegations as set forth above.

15. Plaintiff suffered qualifying disabilities within the meaning of the ADA.

16. Plaintiff was able to perform the essential functions of his job with reasonable accommodations.

17. Plaintiff initiated the interactive process by requesting reasonable accommodations and submitting paperwork supporting his request from his medical provider.

18. Defendant failed to engage in the interactive process and did not provide Meeks with any reasonable accommodations.

19. Defendant discriminated against Plaintiff based on his disabilities by refusing to provide him training on the new computer system, even after he presented the medical paperwork to support this request as a reasonable accommodation.

20. Defendant treated Plaintiff less favorably that employees without disabilities by requiring Plaintiff – and no other employee at the Charlotte office – to work in a 100 degree warehouse, even after he provided the medical paperwork from his provider.

21. Defendant's discriminatory treatment of Plaintiff was done with malice or reckless indifference to Plaintiff's federally protected rights.

22. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and humiliation; and he is entitled to such general and special damages, economic damages, punitive damages, and attorney's fees and costs as permitted by law.

## COUNT 3
### Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203(a).

23. Plaintiff realleges the allegations as set forth above.

24. Plaintiff was engaging in activity protected under the ADA, in that he made requests for reasonable accommodations related to his physical disabilities.

25. Defendant retaliated against him for exercising his rights under the ADA by constructively terminating his employment when it deprived Plaintiff of essential computer training for weeks to push him out of his job.

26. Plaintiff felt compelled to retire, and a reasonable person under the same circumstances would have felt compelled to retire.

27. Defendant's retaliatory conduct was done with malice and with reckless indifference to Plaintiff's state and federally protected rights.

28. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and humiliation; and he is entitled to such general and special damages, economic damages, punitive damages and attorney's fees and costs as permitted by law.

## COUNT 4
### Age Discrimination in Violation of the ADEA, 29 U.S.C. § 623.

29. Plaintiff realleges the allegations as set forth above.

30. Plaintiff is much older than 40 years old.

31. Chicano had a pattern of treating younger employees more favorably than employees over the age of 40.

32. Defendant discriminated against Plaintiff based on his age by treating him differently than similarly situated employes who are younger than him, specifically:

defendant paid employees under the age of 50 overtime pay for performing the same job duties while not paying Plaintiff overtime for the same; defendant required Plaintiff to perform manual and clerical job duties in a hot warehouse that were outside the scope of his normal job duties and never required the same from employees under the age of 50; and Defendant refused to provide computer system training to Plaintiff when they did so for similarly situated employees who were younger than Plaintiff.

33. Defendant's discriminatory treatment of Plaintiff was done with malice or reckless indifference to Plaintiff's federally protected rights.

34. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and humiliation; and he is entitled to such general and special damages, economic damages, punitive damages, and attorney's fees and costs as permitted by law.

## COUNT 5
### Retaliation in violation of the FMLA, 29 U.S.C. § 2614(a).

35. Plaintiff realleges the allegations as set forth above.

36. Plaintiff was engaging in activity protected under the FMLA by taking leave from July 22, 2024, through August 12, 2024.

37. Defendant retaliated against him for exercising his rights under the FMLA by constructively terminating his employment when it deprived Plaintiff of essential computer training for weeks, intentionally making his work impossible.

38. Plaintiff felt compelled to retire, and a reasonable person under the same circumstances would have felt compelled to retire.

39. Defendant's retaliatory conduct was done with malice and with reckless indifference to Plaintiff's state and federally protected rights.

40. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and humiliation; and he is entitled to such general and special damages, economic damages, punitive damages and attorney's fees and costs as permitted by law.

## COUNT 6
### Wrongful discharge in violation of the NCEEPA, N.C.G.S. § 143-422.2 (1977), et seq.

41. Plaintiff realleges the allegations as set forth above.

42. It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination on the basis of age or handicap.

43. By the acts and conduct complained of herein, Defendant has violated the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C.G.S. § 143-422.2 (1977), et seq.

44. Plaintiff was an employee of Defendant.

45. Defendant has more than 15 employees.

46. Plaintiff is a member of protected classes, to wit: he is over the age of 40 at all times during his employment with Defendant; and he has a handicap.

47. Plaintiff was a hard-working employee of Defendant who was well-qualified for the position he held.

48. Plaintiff was constructively terminated because of his age and handicap.

49. Similarly situated employees who were not over the age of 40 were treated differently, as they were not deprived of essential computer training or made to work for hours in a warehouse that was over 90 degrees.

50. The public policy of the State of North Carolina, as codified by N.C. Gen. Stat. § 143-422.2 prohibits age and handicap discrimination by employers with more than fifteen employees.

51. As a proximate result of Defendant's wrongful conduct, Plaintiff has suffered lost back and future wages, benefits, severe emotional distress, anxiety, humiliation, and other compensatory damages, which Plaintiff seeks from Defendant.

52. Defendant's actions were done maliciously, willfully or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

**JURY TRIAL DEMANDED**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff demands a trial by jury and that the following relief be granted:

a) An award of damages of the full amount of the unpaid wages due and owing to Plaintiff;

b) Liquidated damages, penalties, and fees, as provided by law;

c) Reasonable attorneys' fees and expert fees;

d) Costs and expenses of this action;

e) Prejudgment and post-judgment interest, as provided by law;

f) Any and all such other and further relief as this Court deems just and reasonable.

Respectfully submitted on this 21st day of March, 2025.

**HKM Employment Attorneys LLP**

*/s Taylor Adams*
Taylor Adams
N.C. Bar No. 50549
Sunny Panyanouvong-Rubeck
N.C. Bar No. 39966
1001 Elizabeth Avenue, Suite 1B
Charlotte, NC 28204
980-710-4137
TAdams@hkm.com

*/s/ Sandra L. Jonas*
*Sandra L. Jonas[1]
Arizona Bar No. 035824
1 N. 1st Street, Suite 711
Phoenix, Arizona 85004
Phone/Fax: (480) 930-4747
sjonas@hkm.com
Attorneys for Plaintiff

---

[1] An application for admission pro hac vice will be submitted shortly for Sandra L. Jonas, who is an attorney licensed in the states of Arizona and Texas.